IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| F.G. CROSTHWAITE, et al., | No. C -11-4417 JSW (EDL) |
| Plaintiffs, | **REPORT AND RECOMMENDATION RE: PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT** |
| v. | |
| FREMONT PAVING INC., et al. | |
| Defendants. | |

Plaintiffs filed this action pursuant to Sections 3, 502 and 515 of the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1102, 1145 and 1132, alleging that Defendants Fremont Paving Inc. and Brittany Danielle Lebon violated a Collective Bargaining Agreement. Plaintiffs seek an order requiring, among other things, that Defendant Lebon pay unpaid and delinquent contributions to the bargained plans and union in accordance with the Collective Bargaining Agreement. Plaintiffs also seek liquidated damages, interest, attorneys' fees, and costs.   Defendants were served and proofs of service were filed with the Court on October 4, 2011(Dkt. #9) and October 7, 2011 (Dkt. #11). Service was deemed complete under California Code of Civil Procedure 415.20(a) on April 17, 2012. See Stafford Decl. ¶ 16; Dkt. 21. On May 2, 2012, Defendant Fremont Paving Company filed its answer to the first amended complaint. See Docket No. 22 . Defendant Lebon failed to respond to the first amended complaint, and on May 8, 2012, the clerk entered default against Ms. Lebon under Federal Rule of Civil Procedure 55(a). See Docket No. 24.

On August 31, 2012, Plaintiffs filed their Motion for Default Judgment against Ms. Lebon only. See Docket No. 33. Plaintiffs and Fremont Paving have reached a stipulated judgment. See Docket No. 47. On September 19, 2012, Plaintiffs requested that the Court decide the Motion for

Default Judgment without a hearing. See Docket No. 49. On September 21, 2012, the Court vacated the October 16, 2012 hearing. See Docket No. 51. In this Motion for Default Judgment, Plaintiffs seek judgment against Ms. Lebon in the amount of the unpaid and underpaid contributions, liquidated damages, interest, attorneys' fees and costs, as well as audit costs.

For the reasons stated below, the Court recommends granting Plaintiffs' Motion for Default Judgment in the amount of $357,457.32.

**DISCUSSION**

**Individual Liability of Defendant Brittany Lebon**

Plaintiffs seek default judgment against Defendant Lebon as an individual. Ms. Lebon can be individually liable if she is a fiduciary of the Defendant Fremont Paving Inc. See Yeseta v. Baima, 837 F.2d 380, 381-382 (9th Cir. 1988). ERISA § 3(21)(A) has been interpreted as requiring "a broad definition of fiduciary." See Arizona State Carpenters Trust Fund v. Citibank, 125 F.3d 715, 720 (9th Cir. 1997); Board of Trustees of the Air-conditioning and Refrigeration Industry Health and Welfare Trust Fund v. J.R.D. Mechanical Services, Inc. & James R. Divers, 99 F. Supp. 2d 1115, 1120 (C.D. Cal. 1999) ("Unlike the common law definition under which fiduciary status is determined by virtue of the position a person holds, ERISA's definition is functional.") (internal quotations omitted); see also Firestone Tire & Rubber Co. et al. v. Bruch et al., 489 U.S. 101, 113 (1989) ("one is a fiduciary to the extent he exercises any discretionary authority or control."); Acosta v. Pacific Enterprises, 950 F.2d 611, 618 (9th Cir. 1992) ("a persons actions, not the official designation of his role, determine whether he enjoys fiduciary status"). To find Ms. Lebon a fiduciary, the Court must determine: (1) whether the unpaid contributions were trust assets, and (2) whether Ms. Lebon did in fact exercise discretionary authority or control over those assets. See Board of Trustees, 99 F. Supp. 1115, 1120. In general, employer contributions that are owed pursuant to a collective bargaining agreement do not become plan assets until they are paid over to the Trust. See Cline v. Industrial Maintenance Eng'g & Contr. Co., 200 F. 3d 1223, 1234 (9th Cir. 2000) ("Until the employer pays the *employer* contributions over to the plan, the contributions do not become plan assets over which fiduciaries of the plan have a fiduciary obligation; this is true even where the employer is a fiduciary of the plan.") (emphasis added). However, employee

2

contributions to benefit plans that are withheld by their employer from their wages are plan assets, even if not yet delivered to the plan. See United States v. Grizzle, 933 F.2d 943, 946-47 (11th Cir. 1991). See also Board of Trustees, 99 F. Supp. 2d 1115, 1120 (C.D. Cal. 1999) ("Employee wage deductions intended as plan contributions are plan assets, regardless of whether such money is ever in fact conveyed to the plan.").

Here, plaintiffs allege that Defendants withheld money from employee paychecks for the fringe benefit payment and that plan assets included amounts that were withheld from that plan participant's wages by the Defendants for contribution to the plan. First Am. Compl. ¶15. Thus, the contributions are plan assets as the money was withheld for the payment of fringe benefits, and checks were made payable to the Trust.

Whether Ms. Lebon exercised discretionary authority or control over the plan assets is a somewhat close question. Plaintiffs allege that Ms. Lebon had general authority over the fringe benefit plans and was responsible for the payment of contributions. First Am. Compl. ¶ 5. They state that Ms. Lebon was responsible for writing the checks to the Operating Engineers Trust Funds, submitting the checks to the principal for signature and making the contributions when due. Stafford Decl. ¶ 13. Plaintiffs allege that Ms. Lebon was the main point of contact for Plaintiffs, and made representations to Plaintiffs as to the status of payments. First Am. Compl. ¶ 19. Plaintiffs allege that Ms. Lebon took possession of the fringe benefit contributions, failed to pay when they were due, and converted the money for her own use. First Am. Compl. ¶ 5. Plaintiffs state that Ms. Lebon intercepted notices of delinquencies sent by the Trust Funds and other entities in order to cover up her actions. Stafford Decl. ¶ 18. In addition, Plaintiffs state Ms. Lebon was responsible for paying required taxes, which she also failed to do. Stafford Decl. ¶ 18. Further, because Ms. Lebon has failed to respond to the Complaint, she is deemed to have admitted Plaintiffs' factual allegations regarding her status as a fiduciary. See Fed. R. Civ. P. 8(b)(6); Televideo Systems, Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987). On balance, the Court recommends finding that Ms. Lebon is a fiduciary, and as such can be held personally liable for unpaid and delinquent contributions.

**Default Judgment**

A court may not enter a default judgment against an unrepresented minor, an incompetent person, or a person in military service. See Fed. R. Civ. P. 55(b)(2); 50 U.S.C. App. § 521(b)(1). Defendant Lebon is not an unrepresented minor or incompetent person, or a person in military service, or otherwise exempted from default judgment. See Stafford Decl. ¶ 23.

Upon default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true. Televideo Systems, Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (citing Geddes v. United Financial Group, 559 F.2d 557, 560 (9th Cir. 1977)). Necessary facts not contained in the pleadings, and claims which are legally insufficient, however, are not established by default. Cripps v. Life Ins. Co., 980 F.2d 1261, 1267 (9th Cir.1992). Rule 55(b)(2) allows, but does not require, the court to conduct a hearing on damages, as long as it ensures that there is an evidentiary basis for the damages awarded in the default judgment. Action S.A. v. Marc Rich & Co. Inc., 951 F.2d 504, 508 (2nd Cir. 1991). Relief is limited to the plaintiff's specific demand in his complaint. Fed. R. Civ. P. 54(c). Entry of default judgment requires the consideration of several factors, including: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. See Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

Here, the majority of Eitel factors weigh in favor of entry of default judgment. Plaintiffs' claims seeking a defined amount of unpaid contributions and an audit under ERISA and the Trust Fund Collective Bargaining Agreements appear to have merit and the complaint is sufficient to state those claims. The majority of the remaining Eitel factors also weigh in favor of granting default judgment. First, because Ms. Lebon did not file an answer to the complaint, there is nothing to suggest that there is a possibility of a dispute concerning material facts. Second, the sum of money at stake in this action is proportionate; the amount represents the total sum owed under the Trust Fund Master Agreements. Third, there is no evidence that Ms. Lebon's default was due to excusable

4

neglect.

Only the prejudice factor weighs somewhat against entry of default judgment. Plaintiffs argue that if the Court were to deny their motion for default judgment, that they would have no other avenue for recovery. First Am. Compl. ¶ 23; See Pepsico, Inc. v. Cal. Security Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("If Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery."). However, if the motion for default judgment is denied, it appears that Plaintiffs would still have a remedy because there is a stipulated judgment between Fremont Paving and Plaintiffs covering the same time frame, fringe benefit contributions, liquidated damages, interest, fees and costs as sought in this motion. See Docket No. 47. On balance, however, Plaintiffs are entitled to default judgment.

In an action to enforce payment of delinquent contributions, "the court shall award the plan - (A) the unpaid contributions, (B) interest on the unpaid contributions, (C) . . . (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent . . . of the amount determined by the court under subparagraph (A), (D) reasonable attorney's fees and costs . . . ." See 29 U.S.C. § 1132(g)(2). An award under section 1132(g)(2) is appropriate based on the amount of contributions that were delinquent at the time of suit, even if the defendant tendered the unpaid contributions prior to judgment. See Northwest Adm'rs, Inc. v. Albertson's, Inc., 104 F.3d 253, 258 (9th Cir. 1996) (quoting Carpenters Amended and Restated Health Benefit Fund v. John W. Ryan Constr. Co., Inc., 767 F.2d 1170, 1175 (5th Cir. 1985)) ("[M]andatory fees are available under § 1132(g)(2) 'notwithstanding the defendant's post-suit, pre-judgment payment of the delinquent contributions themselves.'"); Idaho Plumbers & Pipefitters Health & Welfare Fund v. United Mechanical Contractors, Inc., 875 F.2d 212, 215-16 (9th Cir. 1989) ("[W]hen (1) the fiduciary obtains a judgment in favor of the plan, (2) unpaid contributions exist at the time of suit, and (3) the plan provides for liquidated damages," section 1132(g)(2) is triggered and a liquidated damage award is mandatory.); see also Iron Workers Dist. Council v. Hudson Steel Fabricators & Erectors, Inc., 68 F.3d 1502, 1507 (2nd Cir. 1995) ("the amount of an award of interest or liquidated damages should logically be predicated upon the amount of the unpaid contributions originally at issue, whether or not outstanding at the time of judgment, since that amount correctly measures the damage caused by

the delinquency."); Board of Trustees of the Sheet Metal Workers v. General Facilities, Inc., 2003 WL 1790837, * 2 (N.D. Cal. March 31, 2003) (citing Carpenters & Joiners Welfare Fund v. Gittleman Corp., 857 F.2d 476, 478 (8th Cir. 1988)) ("Section 1132 provides for liquidated damages as a percentage of 'unpaid contributions' and courts have interpreted 'unpaid contributions' to mean contributions owing and unpaid at the time the lawsuit is filed.").

Plaintiffs have the burden of proving their entitlement to relief through testimony or declarations. To that end, Plaintiffs submitted the declarations of: Michelle R. Stafford, Plaintiffs' counsel; and David E. Hayner, Collections Manager of the Operating Engineers Local Union No. 3 Trust Funds. The evidence establishes that Plaintiffs are employee benefit plans and their Trustees, for the named Operating Engineers Local Union No. 3 Trust Funds, and Operating Engineers Local Union No. 3. Stafford Decl. § 2. The evidence also establishes that Defendant Fremont Paving has been a signatory employer with the Operating Engineers Local Union No. 3 continuously since 1950. Stafford Decl. ¶ 3. Fremont Paving is also signatory to the Independent Northern California Construction Agreement, (the "Independent Agreement") of the Operating Engineers Local Union No. 3 of the International Union of Operating Engineers, AFL-CIO (Union) since 1980. Stafford Decl. ¶ 3. That agreement has not been terminated by either party and continues today. Stafford Decl. ¶ 3; Ex. A. Furthermore, the Independent Agreement between Fremont Paving and the Operating Engineers Local Union No. 3 incorporates by reference at its Section 2, the Master Agreement between the Union and the AGC "Bargaining Agreement." Stafford Decl. ¶ 4; Ex. B, C. The Bargaining Agreement incorporates the Trust Agreements establishing the Plaintiff Trust Funds, and provides that Fremont Paving shall be bound by the terms and conditions of each Trust Agreement and any amendments or amendments thereto. Stafford Decl. ¶ 4; Ex. B,C, Section 12.01.00.

The Bargaining Agreement requires that signatory employers make timely contributions into the Trust Funds at a specified rate for each hour worked by, or paid by, all employees performing work covered under the Bargaining Agreement. Stafford Decl. ¶ 5. The Bargaining Agreement also requires employers to report the number of covered hours worked by, or paid to, each of their employees performing covered work by submitting Employer Reports of Contributions due, along

6

with the amounts owed pursuant to the Reports, to the Trust Funds. Stafford Decl. ¶ 5. Further, as described above, the Court recommends finding that Ms. Lebon is a fiduciary who is liable for contributions under the Collective Bargaining Agreement.

From September 2010 through May 2011, Defendant failed to pay contributions for hours worked by Defendant's employees. Stafford Decl. ¶ 8. Defendant became further delinquent for June and October 2011 contributions. Defendant submitted late payments for October 2011 and May 2012, and timely submitted contributions for November 2011 through April 2012. Stafford Decl. ¶ 15. The amount of unpaid contributions for the months of November 2010 to September 2011is $204,175.74. Hayner Decl. ¶ 3.

Because the contributions were unpaid, the Trust Funds assessed liquidated damages and interest against Defendant. Stafford Decl. ¶ 6. The Bargaining Agreement provides that liquidated damages are calculated for each Trust at $35.00 or 15% of the amount due to each Trust, plus interest at 12% per annum from the 26th day of each month in which contributions were not received or timely postmarked by the 25th of the month until payment is received. Stafford Decl. ¶ 6. The Trustees of the Trust Funds have recently written down interest incurred for hours worked through November 2009, and through an amendment provided interest thereafter accrues at 10% per annum on contributions, and that liquidated damages shall accrue at 20% on delinquent contributions which are the subject of litigation. Stafford Decl. ¶ 6; Ex. D. Plaintiff Trustees have agreed that the lower interest rate shall apply effective January 1, 2010, rather than March 1, 2010. Stafford Decl. ¶ 6. Furthermore, the "Trust Funds make no claim for interest incurred through December 31, 2009 for hours worked through November 2009." Stafford Decl. ¶ 6. The liquidated damages and interest for unpaid contributions for the months of November 2010 to September 2011 is $73,496.72. Hayner Decl. ¶ 3. The liquidated damages and interest for pre-litigation late paid contributions for months of December 2008, June 2009, August 2009, September 2009 and December 2009 through August 2010 are $23,094.28. Hayner Decl. ¶ 3. The liquidated damages and interest for post-litigation late paid contributions for the months of September and October 2010, October 2011, and June 2012 are $25,019.58. Hayner Decl. ¶ 3.

7

Attorneys' fees and costs shall be awarded to a Trust Fund or Employee Benefit Plain that receives a judgment in its favor. See 29 U.S.C. § 1132 (g)(2) (D). Further, the Bargaining Agreement in this case provides for the recovery of attorneys' fees and costs in an action to determine and recover a delinquent balance due. See Stafford Decl. ¶ 7; Ex. C. Plaintiffs' attorneys have spent a total of 148 hours working on this case, comprised of 81.7 hours of work performed by paralegals, 4.2 hours performed by a firm shareholder, and 9.7 hours of work performed by an associate. In addition, Ms. Stafford states that she has personally spent 52.8 hours working on this case. Stafford Decl. ¶ 20. The total attorneys' fees sought is $30, 226.50. Stafford Decl. ¶ 20.

Section 1132 of ERISA authorizes the Court to award "such legal and equitable relief as the court deems appropriate." 29 U.S.C. §1132(g)(2)(E). The Bargaining Agreement provides that attorneys' fees and auditor fees incurred are justified if a contribution is not made or if amounts are found due and owing to the ERISA Plaintiffs. Stafford Decl. ¶ 7. In addition to the reimbursement for attorneys fees of $30,226.50, Plaintiffs are requesting $1,444.50 in costs through September 30, 2012 and $840.00 in anticipated fees through this hearing. Stafford Decl. ¶ 20-22. Because the Court vacated the hearing, Plaintiffs are not entitled to their $840 in anticipated fees. Otherwise Plaintiffs' fees and costs appear to be reasonable.

**CONCLUSION**

For the reasons set forth above, and for good cause shown, it is hereby recommended that default judgment be entered in the amount of $357,457.32, which is comprised of: $277,672.46 in unpaid contributions, liquidated damages and interest through August 28, 2012; $25,019.58 in post litigation late paid contributions, liquidated damages and interest; $23,094.28 in pre-litigation late paid contributions, liquidated damages and interest; $30,226.50 in attorneys' fees; and $1,444.50 in costs.

Any party may serve and file specific written objections to this recommendation within fourteen (14) days after being served with a copy. See 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); Civil Local Rule 72-3. Failure to file objections within the specified time may waive the right to appeal the District Court's order.

Dated: November 14, 2012

_____
ELIZABETH D. LAPORTE
United States Magistrate Judge